IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM MCBRIDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | 5:20-CV-02045-LSC |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

### I. Introduction

The plaintiff, William McBride ("McBride" or "Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). McBride timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

McBride was 20 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (*See* Tr. 26, 36, 154,). Plaintiff has no previous relevant work. (Tr. 24, 36). Plaintiff claims to have been disabled beginning February 12, 2000, due to autism spectrum disorder ("ASD"),

1

attention deficit hyperactive disorder ("ADHD"), sleep apnea, an unspecified learning disability, and low average IQ. (Tr. 158).

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for disability insurance benefits ("DIB") or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that

"substantial medical evidence in the record" adequately supported the finding that the plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent her from performing her past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the

plaintiff can perform other work, the evaluator will find her not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find her disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that McBride has not engaged in SGA since December 3, 2018. (Tr. 16.) According to the ALJ, the plaintiffs ADHD, anxiety disorder, and learning disorder are severe impairments (Tr. 16.) However, the ALJ found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ determined that Plaintiff has the following RFC:

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant would be able to understand, remember and carry out short simple instructions and tasks, and also able [to] maintain attention and concentration for two hours at a time sufficient to complete an eight-hour work day. Contact with the general public should be infrequent and non-intensive. Changes in the workplace should be infrequent and gradually introduced.

(Tr. at 20.)

According to the ALJ, the Plaintiff has no relevant past work according to the definition in 20 C.F.R. § 416.965. (Tr. 24.) The ALJ also determined that the plaintiff was a "younger individual age 18-49" at 18 years old, has at least a high school education, and is able to communicate in English, as those terms are defined

by the regulations. (Tr. 24-25.) The ALJ determined that the "transferability of job skills is not an issue because the claimant does not have past relevant work." (Tr. 25.) Because the ALJ determined that Plaintiff had some nonexertional limitations, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline for finding that there are a significant number of jobs in the national economy that the plaintiff is capable of performing, such as stacker, assembler, laundry worker, tagger, bagger, and hand bander. (*Id.*) The ALJ concluded her findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since December 3, 2018, the date the application was filed." (Tr. 26.)

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported

by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal.

*See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

**III.   Discussion**

Plaintiff argues that the ALJ's decision should be reversed and remanded for two reasons: (1) the ALJ improperly found that he did not have the medically determinable impairment of autism spectrum disorder, and (2) the ALJ did not properly evaluate the credibility of the plaintiff's allegations consistent with the Eleventh Circuit Pain Standard. (Doc. 13 at 5, 9.)

### A. Failure to Find the Medically Determinable Impairment of Autism Spectrum Disorder

To be found disabled, Plaintiff had to demonstrate that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505. At step two, the ALJ had to determine whether Plaintiff had a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "not severe" when medical and other evidence

establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Ruling(s) ("SSR"s) 85-28. The burden of showing that an impairment or combination of impairments is "severe" rested at all times with McBride, as the claimant. *Turner v. Comm'r of Soc. Sec.*, 182 Fed. App'x 946, 948 (11th Cir. 2006) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). Because Plaintiff bore the burden of proving he had a severe impairment, he thus had the burden of establishing the prerequisite for finding a severe impairment, i.e., the existence of a medically determinable impairment. *See Doughty*, 245 F.3d at 1280.

The record must include evidence from acceptable medical sources to establish the existence of a medically determinable impairment. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1513(a), 416.913(a) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability … ; there must be medical … findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities …."); *see also* 20 C.F.R. § 404.1502 (defining symptoms, signs, and laboratory findings).

Here, the ALJ found that the plaintiff had several severe impairments: ADHD, anxiety disorder, and a specific learning disorder (math). (Tr. 16.) However, the ALJ found that none of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ further determined that the plaintiff does not currently have the medically determinable impairment of autism spectrum disorder. (Tr. 17.)

The plaintiff challenges this determination, arguing that the failure to determine that the plaintiff has the medically determinable impairment of autism spectrum disorder is not supported by substantial evidence. (Doc. 13 at 5.) The plaintiff contends that in 2009, Dr. Gauri Jain determined he met the criteria for ASD due to idiosyncratic behaviors and issues. (Doc. 13 at 6; Tr. 273.)

The medical evidence does not support the claim that the plaintiff has a medically determinable impairment of ASD that is "severe." The plaintiff claims that he had issues with socialization and trouble remembering things. (Tr. 36, 41.) He reported that he has trouble getting along with others. (Tr. 37.) Further, the plaintiff's mother reported in a third-party function report that the plaintiff has been autistic since birth. (Tr. 168.) While these are compelling examples of Plaintiff's struggles, they do not establish a severe impairment. The plaintiff could be autistic

9

and still be able to work, meaning his impairment would not be "severe." *See Hutchinson v. Astrue,* 408 F. App'x 324, 326 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work."). The ALJ's findings concluded that substantial evidence showed that Plaintiff's ASD did not prevent his ability to work. (Tr. 17-18.)

The plaintiff claims that the treating record proves that he was diagnosed and treated for ASD and that the ALJ erred by finding that it was not a "severe" impairment. (Doc. 13 at 6-8.) Plaintiff cites *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986), for the court's reasoning that to meet the standard for a "severe" impairment the plaintiff "need only show that h[is] impairment is not so slight and its effect is not so minimal" that it would not be expected to interfere with his ability to work. In an effort to make that showing, Plaintiff contends that through his visits from 2016-2020 with Dr. Ann Chu that his autism diagnosis was maintained, and his prescription of Sertraline was used to manage his symptoms. (Tr. 358, 360-61, 363-64, 366, 368-69, 371-72, 375-76, 378, 380, 382-83, 385, 387, 389, 391-92, 394, 482, 485, 487-88, 490-91, 493-94, 496-97, 499-500.)

The consulting state agency psychiatrist, Dr. Estock, reviewed Dr. Chu's findings and concluded that the plaintiff did not have a medically determinable impairment of autism spectrum disorder that is "severe." (Tr. 51, 53-55.) Dr. Chu's

10

notes regarding Plaintiff's ASD diagnosis remark that Plaintiff displayed "behavioral issues common to adolescence" and often noted that she thought the symptoms would improve based on the plaintiff using his CPAP machine. (Tr. 360, 363, 366, 369, 372, 375, 378, 382, 387, 391, 394, 487, 490, 493, 496, 499.) The ALJ found the absence of any mental status deficits from Plaintiff's family practitioner record from 2018 to 2020 to support Dr. Estock's conclusion that ASD was not among Plaintiff's impairments. (Tr. 18.) *See Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir. 1983) (The Commissioner "may reject the opinion of any physician when the evidence supports a contrary conclusion."). The ALJ also noted the absence of "any formal testing or referral for formal testing for the mental disorders [Dr. Chu] routinely manages with oral medication without referral to a mental health specialist." (Tr. 18.) Moreover, Plaintiff was undiagnosed with autism from 2010-2013 by his psychiatrist, Dr. Debra Williams. (Tr. 286-309.) Dr. Estock also considered records that showed that Plaintiff was scored below 30, in the non-autistic range on the Autism Rating Scale by his teacher on September 22, 2009. (Tr. 51, 204.) Finally, Dr. Estock considered the examining psychiatrist, Dr. Mary Arnold, who in 2019 concluded that the plaintiff did not have ASD. (Tr. 17, 54, 478-481.) As a result, Dr. Estock recommended to the ALJ that the plaintiff did not have a severe medical impairment of ASD. (Tr. 17.)

The plaintiff claims that his daily activities highlight his impairments from ASD. (Doc. 13 at 6.) The plaintiff claims that he has trouble making friends and socializing. (Tr. 41.) Further, his mother maintains that he has to be reminded to engage in self-care and personal hygiene. (Tr. 168.) She attests that he does not like to be told what to do, does not get along with others, and needs some help doing daily activities. (Tr. 167-74.) However, she also reported that he is able to help with chores, prepare basic meals for himself, and drives a car with guidance. (*Id.*) The ALJ found that while Plaintiff's ASD does limit some jobs that the plaintiff can perform, there are some jobs that can be completed by the plaintiff. (Tr. at 19.) *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere exitance of these impairments does not reveal the extent to which they limit h[is] ability to work or undermine the ALJ's determination in that regard."); *Wind v. Barnhart*, 133 Fed. Appx. 684 (11th Cir. 2005) (finding that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work").

Finally, as the Commissioner points out, the threshold nature of the step-two inquiry and the fact that the ALJ found that Plaintiff had other severe impairments at step two means that Plaintiff cannot demonstrate error by failing to include

12

Plaintiff's ASD diagnosis among them. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[E]ven assuming that [the plaintiff] is correct that h[is] additional impairments were "severe," the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and []he cannot demonstrate error below."). (Doc. 15 at 6-7.)

The Plaintiff has failed to establish that the ALJ erred by not including ASD among his "severe" impairments at step two. The Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's ASD was not a "severe" impairment.

### B. Failure to properly evaluate the credibility of the plaintiffs' allegations consistent with the 11th Circuit Pain standard

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the

13

alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir.

1986). Substantial evidence is defined as "more than a mere scintilla" *See Biestek v. Berryhill*, 139 S.Ct 1148, 1154 (2019). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not ... whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Here, the ALJ admits that the plaintiff fulfills step one of the pain standard by finding that he had medically determinable impairments of ADHD, anxiety disorder, and a specific learning disorder. (Tr. 16.) Additionally, she found that the impairments could reasonably be believed to cause some of the alleged symptoms. (Tr. 21.) However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects are not entirely consistent with the medical evidence in the record." (Tr. 21.)

First, the plaintiff contends that the ALJ failed to apply Social Security Ruling ("SSR") 16-3p. (Doc. 13 at 10-11.) The plaintiff argues that under this regulation that the ALJ must provide specific reasons why symptoms do not fulfill the standard. SSR 16-3p: Evaluation of Symptoms in Disability Claims ("The determination or

15

decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.") However, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1210, 1211 (11th Cir. 2005)). The record shows that the ALJ conducted a thorough review of the evidence. (Tr. 20-24.) She discussed hearing testimony, treatment notes from Plaintiff's visits with Dr. Chu, the 2019 teacher assessment of Plaintiff's capabilities, the consultative psychological examination from March 2019, Plaintiff's activities of daily living, and Dr. Estock's report. (*Id.*) Substantial evidence supports the finding that the ALJ properly considered the evidence as a whole, even if she did not specifically refer to every piece of evidence in her opinion.

Next, the plaintiff argues that the ALJ selectively mischaracterized evidence. (Doc. 13 at 11-12.) As an example, Plaintiff points to the ALJ's use of the 2019 teacher assessment to support her conclusion that Plaintiff is capable of following short

instructions and completing simple tasks, but the ALJ does not mention the parts of the report that do not support her conclusion. (Doc. 13 at 12.) The ALJ referred to a teacher's description of Plaintiff having "no problem comprehending oral instructions and only slight problems with understanding and participating in class discussions, giving organized oral explanations and adequate descriptions and recalling and applying previously learned material." (Tr. 22, 193.) However, the teacher also rated Plaintiff as having a serious problem with expressing ideas in written form and applying problem-solving skills in class discussions. (Tr. 193.) The teacher also explained that Plaintiff "works best in a small group [and] needs activities broken down into smaller, more manageable steps." (*Id.*) Again, the ALJ does not have to mention every piece of evidence as long as they consider the disability as a whole. *See Mitchell*, 771 F.3d at 782.

The record supports a finding that the ALJ looked at the evidence as a whole in considering the teacher assessment. (Tr. at 193-195.) The teacher report as a whole supports the finding that while the plaintiff did have some issues affecting his performance at school, none of them would render him unable to work. *Id.* The ALJ specially explained that she accommodated Plaintiff's need for activities to be broken down into smaller, more manageable steps by "restricting the claimant to work with short simple instructions and tasks." (Tr. 22.) The VE also testified that someone

17

with the Plaintiff's RFC could perform jobs such as stacker, assembler, laundry worker, tagger, bagger, and hand bander. (Tr. 42-44.) The ALJ thoroughly discussed the evidence, and substantial evidence supports her determinations about the intensity, persistence, and limiting effects of Plaintiff's impairments.

The plaintiff then argues that the ALJ did not properly consider the treatment with his treating physician Dr. Gauri Jain in 2009. (Doc. 13 at 12-13.) While the plaintiff did experience a myriad of symptoms at this time, it was in 2009 and the plaintiff was 9 years old. (Tr. 273-84.) The ALJ focused her analysis on recent doctor's visits from 2018 through 2020. (Tr. at 19-24.) Presumably this emphasis was based on a belief that the Plaintiff's more recent treatment records would reveal more about his status at the time of the ALJ's decision.

Additionally, the plaintiff argues that the ALJ did not consider the treatment at Lifetime Behavioral Service. (Doc. 13 at 13.) The ALJ did address this evidence, noting that records repeatedly document Plaintiff as having "calm behavior with social smile, … normal speech, age appropriate judgment, logical and coherent thought process, … fair insight and fair eye contact." (Tr. 17, 286, 288, 290, 292, 294, 296, 298, 300, 302, 304, 306, 308.) Furthermore, the ALJ recognized that treatment notes indicate that medication was helpful in managing Plaintiff's symptoms. (*Id.*)

18

Plaintiff also contends that the ALJ improperly relied on the state psychological evaluation by Dr. Mary Arnold in 2019 rather than Plaintiff's longitudinal treatment history. (Doc. 13 at 14.) He argues that Dr. Arnold's review of the record was incomplete and not specific enough as to the plaintiff's mental capacity. *Id.* Dr. Arnold performed a psychological evaluation of Plaintiff, including administering the WAIS-IV and conducting a mental status exam that addressed his behavior and appearance, mood and affect, cognitive processing, current and general information, judgment, and abstract reasoning. (Tr. at 478-81.) Dr. Arnold also reviewed Plaintiff's treatment records, but his academic records were not available for review. (Tr. 480-81.) The ALJ did not err in considering Dr. Arnold's report, which was based on her personal examination of Plaintiff and consideration of his treatment records. The ALJ considered this evidence in conjunction with other treatment records and evaluations, the plaintiff's own testimony about his limitations and activities of daily living, and third-party reports. (Tr. 18-24.) Substantial evidence supports the ALJ's conclusion.

Finally, the plaintiff argues that the ALJ improperly characterized the plaintiff's abilities and activity level. (Doc. 13 at 14.) The ALJ found that he was capable of short and simple instructions and task work. (Tr. 20.) Plaintiff's mother completed a Social Security Administration function report and acknowledged

Plaintiff's ability to perform certain tasks with assistance, such as feeding pets, mowing, playing video games, driving, preparing simple meals, and hunting. (Tr. 167-174.) The ALJ's RFC determination properly accommodates for Plaintiff's limitations in these areas because it includes a nonexertional limitation that Plaintiff could "understand, remember and carry out short simple instructions and tasks," much as he does when is performing his daily activities with oversight or direction from a parent or teacher. (Tr. 20.)

Substantial evidence shows that the ALJ properly considered the plaintiff's evidence as a whole and concluded that the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21.)

## IV. Conclusion

Upon review of the administrative record, and considering Plaintiff's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON AUGUST 19, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913